IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| LUZ S. TORRES BURGOS, et al., | \* |
| Plaintiffs | \* |
| vs. | \* CIVIL NO. 98-2394 (JP) |
| LIFE INSURANCE CO. OF AMERICA, et al., | \* |
| Defendants | \* |

### OPINION AND ORDER

**I.   INTRODUCTION**

The Court has before it Defendants Life Insurance Company of America and Cigna Group Insurance Company's Brief in Compliance with Initial Scheduling Conference and Requesting Summary Judgment (**docket No. 14**); and Plaintiffs' Opposition (docket No. 15); Defendants' Reply (docket No. 17); and Plaintiffs' Sur-Reply (docket No. 18). Plaintiffs Luz S. Torres Burgos ("Torres") and Nelson E. Colón Meléndez bring this action under the Employment Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001-1461, claiming that Defendants wrongly denied Torres benefits under the Life Insurance Company of North America Long Term Disability Income Policy ("the Plan"), an employee welfare benefit plan governed by ERISA. Defendants move for dismissal on the grounds that Torres failed to exhaust administrative remedies under the Plan before filing suit.

**II.  SUMMARY JUDGMENT STANDARD**

Rule 56(c) of the Federal Rules of Civil Procedure provides for the entry of summary judgment where "the pleadings, depositions,



CIVIL NO. 98-2394 (JP) 2

answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Pagano v. Frank, 983 F.2d 343, 347 (1st Cir. 1993); Lipsett v. University of Puerto Rico, 864 F.2d 881, 894 (1st Cir. 1988). The function of summary judgment is "to pierce the boilerplate of the pleadings and examine the parties' proof to determine whether a trial is actually necessary." Vega-Rodríguez v. Puerto Rico Tel. Co., 110 F.3d 174, 178 (1st Cir. 1997) (citing Wynne v. Tufts Univ. Sch. of Med., 976 F.2d 791, 794 (1st Cir. 1992)). It allows courts and litigants to avoid going to trial in cases where the plaintiff cannot prevail, thus conserving the parties' time and money and saving scarce judicial resources. See McCarthy v. Northwest Airlines, Inc., 56 F.3d 313, 315 (1st Cir. 1995).

The party seeking summary judgment bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). To defeat a motion for summary judgment, "the nonmoving party must demonstrate the existence of a trial-worthy issue as to some material fact." Cortés Irizarry v. Corporación Insular, 111 F.3d 184, 187 (1st Cir. 1997); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986); Pagano, 983 F.2d at 347. A fact is material if, based on the substantive law at issue, it might affect the outcome of the case. See Anderson, 477 U.S. at 248, 106 S. Ct. at 2510; Mack v.

CIVIL NO. 98-2394 (JP)                                    3

Great Atl. & Pac. Tea Co., Inc., 871 F.2d 179, 181 (1st Cir. 1989). A material issue is trial-worthy if there is sufficient evidence to permit a reasonable trier of fact to resolve the issue in the non-moving party's favor. See Anderson, 477 U.S. at 248, 106 S. Ct. at 2510; Boston Athletic Ass'n v. Sullivan, 867 F.2d 22, 24 (1st Cir. 1983). The non-movant may not rest upon mere allegations or denials of the pleadings, but rather must come forward with admissible evidence. See Fed. R. Civ. P. 56(e); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L.Ed.2d 538 (1986) ("[The non-movant] must do more than simply show that there is some metaphysical doubt as to the material facts.") It is with this standard in mind that the Court addresses the motion before it.

**III. UNCONTESTED FACTS**

The parties agreed at the Initial Scheduling Conference that the following facts are uncontested. The Court has not considered any other facts proposed as uncontested by the parties because neither of the parties submitted any evidence in support thereof. See Fed. R. Civ. P. 56(e).

1. On February 6, 1996, CIGNA Group Insurance received a Group Long Term Disability application from Ms. Wanda Goyco, Senior Vice President of Ponce Federal Bank, regarding the claim by Plaintiff Torres for long term disability benefits.

2. Life Insurance Company of North America notified Plaintiff by letter dated July 1, 1996 that her benefits were being denied because there was "insufficient evidence to support the severity of [her] condition."

3. On August 12, 1996, John Orr, Sub-Manager of Human Resources of Ponce Federal Bank, wrote to plaintiff to notify her that the bank had received a letter from CIGNA Group Insurance indicating that her long term disability claim had been denied. In this letter, Mr. Orr also explained to plaintiff that in order to appeal the

CIVIL NO. 98-2394 (JP)                      4

       determination, she would have to request a revision by letter and include all medical information corroborating her disability.

4. Plaintiff submitted a medical report prepared by Dr. Berríos-Latorre, Torres' attending psychiatrist, dated September 24, 1996, stating that Torres was unable to perform any work or maintain an occupation due to her medical condition.

5. Plaintiff Torres earned $1,400.00 per month when she worked at Ponce Federal Bank.

6. Plaintiff Torres was confined in a hospital for her mental condition for 18 days.

7. Plaintiff Torres is currently receiving Social Security benefits because of her disability.

8. The benefits Plaintiff Torres would receive under the Long Term Disability Plan total $50.00 per month.

## IV. ERISA EXHAUSTION REQUIREMENT

Defendants contends that Plaintiffs are precluded from bringing the instant action because they did not first exhaust administrative remedies. Although ERISA does not expressly require claimants to exhaust administrative remedies before bringing suit in federal court, ERISA section 503 provides that every benefit plan shall establish an administrative review procedure for "any participant whose claim for benefits has been denied . . ." 29 U.S.C. § 1133. From this provision, the courts have read into the statute an exhaustion of administrative remedies requirement, see Fallick v. Nationwide Mut. Ins. Co., 162 F.3d 410, 418 n.4 (6th Cir. 1998) (listing cases), applied by the courts as a matter of judicial discretion. See Committee of Blind Vendors v. District of Columbia, 28 F.3d 130, 134 (D.C. Cir. 1994) (stating that when statute does not expressly require exhaustion, "the exhaustion doctrine applies only 'as a matter of judicial discretion'") (quoting Darby v. Cisneros, 509 U.S. 137, 153-54 113 S. Ct. 2539, 2548, 125 L.Ed.2d 113 (1993)));

CIVIL NO. 98-2394 (JP)                5

see also McLean Hospital Corp. v. Lasher, 819 F. Supp. 110, 121-22 (D. Mass. 1993) (discussing public policy underlying ERISA exhaustion doctrine, including preventing premature judicial interference in the decision-making process and reducing frivolous lawsuits).

The First Circuit has expressly held that the exhaustion requirement applies in the context of plan-based ERISA claims. In Drinkwater v. Metropolitan Life Ins. Co., 846 F.2d 821 (1st Cir. 1988), the Court affirmed the decision of the district court in dismissing the plan-based ERISA claims for failing to exhaust administrative remedies. See Drinkwater, 846 F.2d at 825-26. While recognizing that an exception to the exhaustion requirement would exist where the claimant demonstrates the futility or inadequacy of the administrative remedies, the plaintiff in that case failed to produce any evidence to support the application of this exception. See id. at 826. In Terry v. Bayer Corp., 145 F.3d 28 (1st Cir. 1998), the Court reaffirmed this approach, and stated rotundly that "a claimant must have exhausted the plan's administrative remedies before bringing suit to recover benefits." 145 F.3d at 40 (citing Drinkwater, 846 F.2d 825-26). The Terry Court further noted that a claimant must pursue the plan's internal appeals process prior to bringing suit, "unless 'the administrative route is futile or the remedy inadequate.'" Id. (quoting Drinkwater, 846 F.2d at 826); see also Makar v. Health Care Corp., 872 F.2d 80, 82-83 (4th Cir. 1989); Amato v. Bernard, 618 F.2d 559, 566-68 (9th Cir. 1980). Hence, it is established in the First Circuit that prior to initiating a civil action, a claimant seeking to recover under an employee welfare benefits plan governed by ERISA must either exhaust internal

CIVIL NO. 98-2394 (JP)                6

administrative remedies, as provided in the plan, or demonstrate the futility or inadequacy of those remedies.

Here, it is uncontested that on February 6, 1996, Torres submitted to Defendants a request for long term disability benefits. By letter dated July 1, 1996, Defendants notified Torres that her request had been denied. Thus, Torres had sixty (60) days thereafter to appeal the denial of benefits. On September 24, 1996, 24 days beyond the 60-day appeals period, Torres submitted a report from her treating psychiatrist stating that Torres was unable to perform any work or maintain an occupation due to her medical condition.

In <u>Terry</u>, the First Circuit held that fulfillment of the exhaustion requirement mandates that the claimant file appeals in a timely fashion, in accordance with the terms of the plan. <u>See</u> <u>Terry</u>, 145 F.3d at 40. That case, however, involved an egregious disregard of the administrative appeals process, as the plaintiff attempted to file an appeal over one year late even though he was at all relevant times represented by counsel, and the defendant's benefits manager took affirmative steps to inform the plaintiff how to pursue an appeal. <u>See</u> <u>id.</u> at 40-41. In light of these facts, and the goals of economy underlying the internal appeals process, the Court determined that the denial of benefits based on the late appeal was not "unreasonable." <u>Id.</u> at 41.

The case at bar, however, presents an entirely different picture. As a preliminary matter, the Court will assume, given the absence of contrary evidence before the Court and for the purposes of resolving this motion only, that submission of the September 24, 1996 psychiatrist report constituted an appeal of the denial of benefits. Although Defendants contend that they never received a

CIVIL NO. 98-2394 (JP)                              7

written request for review from Torres, and that they had specifically notified Torres of the procedures for seeking review, the Court cannot, on summary judgment, credit these unsupported allegations. Torres' 24-day delay in seeking review of a denial of benefits is very distinct from Terry's failure to avail himself of the appeals process for over one year. The Court cannot say, therefore, without a further development of the factual record, that Defendants' denial of benefits was reasonable. For example, in Terry the First Circuit emphasized that if the plaintiff's procedural default had been caused by improprieties on the part of the plan, a different result would be mandated. See id. at 40-41. The parties have chosen not to support their briefs with any evidence, and thus this Court is without an adequate factual record upon which to evaluate the circumstances surrounding the denial of benefits. On this record, summary judgment must be denied.

V.  **CONCLUSION**

In light of the foregoing, the Court hereby **DENIES** Defendants' motion for summary judgment. A Further Scheduling Conference is hereby **SET** for **August 1, 2001, at 2:00 p.m.**

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 26th day of June, 2001.

                                             _____
                                             JAIME PIERAS, JR.
                                             U.S. SENIOR DISTRICT JUDGE