## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | | |
|---|---|---|
| LUZ S. TORRES BURGOS, | * | |
| ET AL | * | CIVIL NO. 98-2394 (JP) |
| **Plaintiffs** | * | |
| | * | |
| Vs. | * | |
| | * | |
| LIFE INSURANCE COMPANY OF | * | |
| NORTH AMERICA; EL ALS | * | |
| **Defendants** | * | |

*************************************

## MOTION IN COMPLIANCE WITH ORDER

**TO THE HONORABLE COURT:**

Comes now plaintiffs, through her undersigned attorney very respectfully state and prays:

1. On August 18, 2006 Judge Pieras entered an order to the parties to electronically resubmit the briefs filed at dockets number 25 and 26 with a copy of the plan in question.

2. In order to comply with such order and facilitate the court to have all the briefs it is hereby also enclosed plaintiff's previous brief presented on May 11, 1999 (Exhibit I, docket #15) in compliance with initial scheduling conference order and supplemental brief presented on August 10, 2001 (Exhibit II, docket #25).

3. In relation to the plan (policy) copy of the documents provided by defendants after plaintiff's request through attorney Ricardo Zapater-Lanuza in relation to an investigation of the Insurance Commissioner of Puerto Rico, case number I-XII-2047-971.  (Exhibit III)

4. To highlight the provisions alleged to be relevant to the interpretation of the policy; our submitted copy has underlined the provisions indicated in the briefs.

WHEREFORE, plaintiff respectfully prays that the Court takes notice of the electronically submitted documents and enter a Judgment determining that defendants in bad

faith arbitrarily and a capricious way denied plaintiff's entitled rights under the policy and

impose fines as provided under Employee Retirement Income Security Act (ERISA) and/or

impose punitive damages admonishing defendants not to do this again deterring them from

following this conduct.

RESPECTFULLY SUBMITTED.

In Ponce, Puerto Rico, this September 6, 2006.

CERTIFICATE OF SERVICE: I hereby certify that on this date, the undersigned have

electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which

will send notification to the following: Arturo Bauermeister-Baldric to abauerme@fgrlaw.com

and to Maria Isabel Rey-Cancio to mrey@fgrlaw.com, jcperez@fgrlaw.com.


/s/Lemuel Negrón-Colón
PO Box 8849
Ponce, PR 00732-8849
Tel./Fax 840-6719
USDC-PR 211202
e-mail: lemuel@coqui.net

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

LUZ S. TORRES BURGOS, et al    *
   Plaintiffs    *
        *
   vs.    *    CIVIL NO. 98-2394 (JP)
        *
LIFE INSURANCE COMPANY OF    *
AMERICA, et al    *
   Defendants    *
*******************************

## PLAINTIFF'S BRIEF

TO THE HONORABLE COURT:

COMES NOW the plantiff's, Luz S. Torres Burgos, Nelson E. Colón Meléndez, through their undersigned attorneys and very respectfully submits the following brief:

1. In April 29, 1999, Judge Jaime Pieras, Jr, entered an initial scheduling conference order requesting the parties to submit briefs regarding Torres' denial of benefits, including the appropriate standard of review, effect of Social Security determination of disability, and interpretation of the Plan provision regarding the time period and amount of benefits Torres' would have received.

### I. JURISDICTION

The action arises under the Employee Retirement Income Security Act of 1974 ("ERISA") 29 USC § 1002(1). Jurisdiction is governed by 29 USC § 1132(e)(1), which provides:

"Except for actions under subsections (a)(1)(B) of this section the district courts of the United States shall have exclusive jurisdiction of civil actions under this

1

subchapter... State courts of competent jurisdiction and district courts of the United States shall have concurrent jurisdiction of actions under subsection (a)(1)(B) of this Section."

Subsection (a)(1)(B) provides as follows:

"A civil action may be brought- (1) by a participant or beneficiary (A)...(B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the term of the plan." Accordingly, both the State Court and the United States District Court, have original subject matter jurisdiction to hear this cause of action."

## II. STANDARD OF REVIEW

A. There are three standards of review for ERISA plan interpretations: (1) de novo, which is applicable where plan administrator is not afforded discretion; (2) arbitrary and capricious, which is applicable where plan administrator possesses discretion; and (3) heightened arbitrary and capricious, which is applicable where there is conflict of interest, Marecek v BellSouth Servs. (1995, CA11 Ala) 49 F3d 702, 8 FLW Fed C 1152.

Plantiff's respectfully considers applicable the first or in the alternative the second of the standards or review.  The only possible discretion under this case for the plan administrator was to: "at is own expense, will have the right to examine any person for whom a claim is pending as often as it may reasonably require." Long Term Disability Income Policy. Physical

Examination. Endorsement of Provisions, page 1.(inserted between pages 11 and 12 of the policy)

B.   The Employee Retirement Income Security Act (ERISA) (29 USC § 1001 et seq.) is a comprehensive federal statutory scheme designed to promote the interests of employees and their beneficiaries in employee benefit plans.  ERISA was adopted by Congress to ensure that if a worker has been promised a defined benefit upon retirement, and if he or she has fulfilled whatever conditions are required to obtain a vested benefits, he or she actually receives it.  Burch v George (1994) 7 Cal 4th 246, 27 Cal Rptr 2d 165, 866 P2d 92, 94 CDOS 958, 94 Daily Journal DAR 1591.

C.   Purpose of ERISA, which is a comprehensive and reticulated statute, is to secure guaranteed pension payments to participants by ensuring honest administration of financially sound plans.  Atwood v Burlington Indus, Equity (1994, MD NC) 18 EBC 2009.

D.   An action under section 510 of ERISA consists of the following elements: (1) discharge or discipline of, or discrimination against, a participant in an employee benefit plan, (2) accomplished either (a) because the participant exercised rights under the benefit plan or ERISA or (b) to interfere with the participant's rights under the benefit plan or ERISA.  With respect to the second element, the employer's intent, it should be emphasized that the employer's (or other plan administrator's) attempt to restrict or avoid payment of benefits must be a *motivating factor* behind the employer's

3

discipline of, or discrimination against, the employee or other beneficiary, in order for the cause of action to lie. Bruce v Kmart Corp. (1983, WD Ark) 568 F supp 378.

E.    In Farrow vs Montgomery Ward Long Term Disability Plan (1986, 1st Dist.) 176 CAL App 3d 648, 222 CAL Reporter 325, the court analogized the case to a Social Security disability case. The definition of disability in the Montgomery Ward plan was very similar to the Social Security definition, and the standard of review in Social Security cases is also substantial evidence. Based on the analogy, the court applied the rule applicable to Social Security cases, that the burden of proof of disability is on the claimant; however, once the claimant has presented a prima facie case, the burden of going forward shifts to the plan. In Farrow, a showing that claimant could not engage in her former occupation and had no particular education, training, or experience  to qualify her for other types of work within her physical limitations was deemed sufficient to make a prima facie case. The burden then shifted to the plan to demonstrate that the claimant was able to engage in a substantially gainful occupation, or might reasonably become so able.

F.    The exhaustion of administrative remedies required by ERISA was only a request to be done in writing within the 60 days period from the receipt of the determination notification letter. On such date and still today Mrs. Torres was unable, so she was to be represented by others. In this case Dr. Berrios Latorre, her attending psychiatrist, sent a letter dated September 24, 1996 stating that plaintiff was unable to perform any work due to

4

her medical condition this must be considered enough to constitute an appeal of the denial for purposes of ERISA's administrative exhaustion. There are no form requisites under ERISA's administrative procedure except for being in writing.

III. EFFECT OF SOCIAL SECURITY DETERMINATION OF DISABILITY

A.  Considering the previous mentioned standard of review, the social security determination of disability must be considered to have two effects in this case:

1.  Establish the prima facie case evidence of the disability.

2.  Reduce the amount of the monthly benefits as provided in page 7 of the policy (SCHEDULE, MONTHLY BENEFIT) "The monthly benefit for an Employee for any month is:

1. The lesser of

a. 66 2/3% of the Employee's Basic Monthly Earnings rounded to the nearest dollar; or

b.  $7,500; and

2.  minus Other Benefits for that month.

The Monthly Benefit will not be less than $50., regardless of any reductions shown in this schedule...  Other benefits include: 1. any amounts which the Employee or his dependents receive on account of his disability under: (a)(b)(c)(d)(e)(f)(g) 2. any disability  or Old Age benefits payable under the Federal Social Security Act..."

IV. INTERPRETATION OF THE PLAN PROVISION REGARDING THE TIME
PERIOD AND AMOUNT OF BENEFITS

A.  Once determinated the reduction of the benefit, we must

5

evaluate the definitions of the policy for disability: "An
Employee will be considered Disabled if because of Injury or
Sickness: 1.  he is unable to perform all the material duties of
his regular occupation; and **after Monthly Benefits have been
payable for 24 months**, he is unable to perform all material
duties of any occupation for which he is or may reasonably become
qualified based on his education, training or experience."  This
clearly establish the policy coverage possibility for more than
24 month.  Even more, the proper title of the policy is " Long
Term Disability Income Policy."

B.  The same policy at page 8 established the " COMMENCEMENT
OF BENEFITS.  The insurance Company will begin paying Monthly
Benefits in amounts determined from the Schedule when it receives
due proof that:  (1) the Employee became Disabled while insured
for this Long Term Disability Insurance; and...  DURATION OF
BENEFITS.  The Insurance Company will stop paying Monthly
Benefits on the earlier of the following dates:  (1) the date the
Employee ceases to be Disabled; or (2) ... (a) the Employee 65th
birthday."

C.  At page 8 continued, the policy has a 24 month
limitation of coverage for mental illness, alcoholism and drug
abuse "while the Employee is not confined in a hospital.  An
Employee will be considered confined in a hospital only if he is
confined continuously for the least 14 days in hospital licensed
to provide care and treatment for the condition causing the
Disability."  In this case part of the documentary evidence not
controverted is the record of Luz Torres Burgos from First

6

Hospital Panamericano received by defendant since May 7, 1996 (see number 16 of the defendant's listed documentary evidence).

Such record clearly established on the first page the patient admission date, 06/29/95 and the discharge date 07/17/95; more than the 14 days required by policy to avoid the mental illness limitation.

D.   A banker insured as such, who has suffered a nervous breakdown, anxiety neurosis , nervousness, pain in one eye, and stomach trouble, and is unable to concentrate his thoughts or comprehend what he reads for more than 30 minutes or an hour, and who becomes confused in his speech under adverse conditions and is shown by medical testimony to unable to do the work of a banker or the executive work of a bank, is shown to be totally and permanently disabled to follow continuously his occupation as a banker, although he is in good physical health and otherwise sound mentally and is, at the time of trial, actively engaged in the work of a bath establishment and beauty parlor.   (Mutual Life Ins. Co. v. Beckmann, 261 Ky 286, 87 SW2d 602).   In our case, Mrs. Torres diagnosis was Major Depression, Epilepsy and other physical conditions.

E.   Considering the above mentioned not controverted facts, the law and policy, plaintiff is entitled to $50.00 monthly for 47 past due and to continue receiving benefits until ceases to be Disabled; or reaches the age of 65.

### V. BAD FAITH AND SANCTIONS

A.   A section of ERISA imposes discretionary fines of up to $100 per day against an administrator who fails or refuses to

provide information required by ERISA to a participant or
beneficiary within 30 days of the request.  29 USC § 1132(c).  In
this case defedant's were requested to provide a copy of the
policy and plaintiff's needed to move action number I-XII-2047-
971 at Puerto Rico Insurance Commissioner Office to receive it on
December, 1997 even after being requested since April, 1997.

    B.   In considering $543,692 attorney's fee award to
plaintiff's in ERISA-based action by former employees to recover
severance benefits, court applied five-factor test involving (1)
degree of defendant's culpability or bad faith, (2) ability of
defendant to pay, (3) whether fee award would deter other persons
from acting similarly under like circumstances, (4) relative
merits of parties' positions, and (5) whether action conferred
common benefit on group of pension plan participants; court then
looked to amount of time spent on case and applied appropriate
hourly rates (lodestar approach).  Algie v RCA Global
Communication (1994, SDNY) 891 F Supp 875, 1994 US Dist LEXIS
16764, adhered to, application den, request gr (SD NY) 1994 US
dist LEXIS 18046, affd (CA2 NY) 60 F3d 956. 1995 US App LEXIS
16955 and later proceeding (SD NY) 1995 US Dist LEXIS 15141, 19
EBC 2094.

    C.   Action for bad-faith denial.  In Berry v Ciba-Geigy Corp
(1985, CA4 SC) 761 F2d 1003, 6EBC 1481 the Fourth Circuit dropped
an intriguing hint of a possible action for a plan's bad faith.
In that case, the court reversed a trial court order reinstating
the plaintiff's disability benefits, rendered after a jury found
the defendant's behavior to be arbitrary or capricious or in bad

faith.

Wherefore plaintiff's respectfully prays this action be granted ordering defendant's to pay the benefit amounts that plaintiff's are entitled and the sanctions and attorneys' fees that may consider applicable.

I HEREBY CERTIFY that I have sent a true and exact copy of this document to Luis F. Colón-Conde Fiddler González & Rodríguez PO Box 363507 San Juan, PR 00936-3507.

RESPECTFULLY SUBMITTED

In Ponce, Puerto Rico, this May 10, 1999.

Lemuel Negrón-Colón
PO Box 8849
Ponce, PR 00732
Tel./Fax 840-6719
USDC-PR 211202

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | | |
|---|---|---|
| LUZ S. TORRES BURGOS, | * | |
| ET AL | * | CIVIL NO. 98-2394 (JP) |
| **Plaintiffs** | * | |
| | * | |
| v | * | |
| | * | |
| LIFE INSURANCE COMPANY OF | * | |
| NORTH AMERICA; EL ALS | * | |
| **Defendants** | * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**SUPPLEMENTAL BRIEF**

**TO THE HONORABLE COURT:**

Come now plaintiffs, through her undersigned attorney very respectfully state and prays:

1. On July 20, 2001 Senior Judge Pieras entered ordered to the parties to submit a copy of the plan highlighting the provisions each allege to be relevant to the interpretation of the clause relating to disabilities due to mental illness. The parties were also instructed to submit supplemental briefs on that limited issue.

2. We must initially evaluate the definition of the policy for disability: **"An employee will be considered Disabled if because of Injury or Sickness:**

   **1. He is unable to perform all the material duties of his regular occupation; and after Monthly Benefits have been payable for 24 months, he is unable to perform all the material duties of any occupation for which he is or any reasonably become qualified based on his education, training or experience."( Policy page 3 LM-6N09)**

1

This clearly establish the policy coverage possibility for more than 24 month. Even more, the proper title of the policy is **"Long Term Disability Income Policy"**.

    3. In Mutual Life Ins. Co. vs Bekmann, 261 Ky 286, 87 SW2d 602 the court determined that a banker insured as such, who has suffered a nervous breakdown, anxiety neurosis, nervousness, pain in one eye, and stomach trouble, and is unable to concentrate his thoughts or comprehend what he reads for more than 30 minutes or an hour, and who becomes confused in his speech under adverse conditions and is shown by medical testimony to unable to do the work of a banker or the executive work of a bank, **is shown to be totally and permanently disabled** to follow continuously his occupation as a banker, although he is in good physical health and otherwise sound mentally and is, at the time of trial, actively engaged in the work of a bath establishment and beauty parlor.

    4. In our case, Mrs. Torres diagnosis was Major Depression, Epilepsy and other physical conditions and is actually and undisputed fact that she is currently receiving Social Security benefits because of her disability. For a banker, enough to show to be permanently disabled.

    5. The same policy at page 8 (LM-6N20) established the

### "COMMENCEMENT OF BENEFITS.

**The insurance Company will begin paying Monthly Benefits in amounts determined from the schedule when it receives due proof that: (1) the Employee became Disabled while insured for this Long Term Disability Insurance; and ...**

### DURATION OF BENEFITS.

**The insurance Company will stop paying Monthly Benefits on the earlier of the following dates: (1) the date the Employee ceases to be Disabled; or (2)... The later**

of: (a) the Employee 65th birthday."

6. Defendants pretends to establish an issue for the limitation of coverage for mental illness at page 8 (LM-6N21) of the policy:

## "INSURING PROVISIONS

## LONG TERM DISABILITY BENEFITS

**MENTAL ILLNESS ALCOHOLISM AND DRUG ABUSE LIMITATION.**
**The insurance Company will pay Monthly Benefits for no more than 24 months during an Employee's lifetime for Disability or Residual Disability caused or contributed to by mental illness, alcoholism or drug abuse *while the Employee is not confined in a hospital*. An Employee will be considered confined in a hospital only if he is confined continuously for at least 14 days in a hospital licensed to provide care and treatment for the condition causing the Disability."** (Emphasis provided)

7. As stated in the uncontested facts of the opinion and order dated June 26, 2001 of Honorable Judge Pieras, accepted by defendants, fact number 6 states that: **"Plaintiff Torres was confined in a hospital for her mental condition for 18 days."**

8. The controversy raised about this limitation for the phrase while the employee is not confined in a hospital is intended by defendants to be interpreted by a definition of a dictionary instead of the proper policy's definition when it clearly states that "an Employee will be considered confined in a hospital only if he is confined continuously for at least 14 days in a hospital licensed to provide care and treatment for the condition causing the Disability".

9. Plaintiff must be considered entitled to the long term benefit, not limited by the clause because her illness was severe enough to comply with the exclusion stated on such clause. (She

3

was confined in hospital 18 days, exceeding the 14 days required).

10. In Rodríguez - Abreu v. Chase Manhattan Bank, N. A., 986 F. 2d 580 (1st Cir. 1993) the court stated that "When interpreting provisions of ERISA benefit plan, court uses federal substantive law, including commonsense canons of contract interpretation.... Contract language in an ERISA action is to be given its plain meaning ".

11. In the case of Jane G. Fitts v. Federal National Mortgage Association, and Unum Life Insurance Company of America 77 F. Supp. 2d 9; 1999 the court discussed the Applicability of the Rule of Contract Construction, "Contra Proferentem," to Term "Mental Illness" it must be stated the fact that in such case the plan and policy did not defined "mental illness". In our case the policy has a definition.

12. It can be added that the court in Phillips v Lincoln Nat. Life Ins. Co. 978 F2d 302. Where a policy covered under ERISA limited the mental illness benefit the court held that the insured could not be denied benefits under the limitation. On that case the District Court adopted the state law rule of contract interpretation against the drafter.

13. One of the exclusionary clauses commonly found in health or disability insurance policies is one that limits or excludes coverage for mental illnesses or disorders. However, the scope of such terms is quite unclear--is it limited to diseases that are treated by psychiatric methods, or should it be broadly interpreted to include a wide variety of abnormal behaviors. For example, in Kunin v. Benefit Trust Life Ins. Co. (1990, CA9 Cal) 910 F2d 534, 19 ALR5th 1017, the court determined that where an insured was treated for autism, such expenses were not excluded under a group health insurance policy's provision limiting coverage for "mental illness," as the expert and lay evidence showed that such condition was organically based and not

4

generally considered to be a mental illness, and since ambiguities in insurance contracts should be construed against the insurers.

WHEREFORE, plaintiff respectfully prays that an order be entered resolving the issue with a determination that plaintiff can not be excluded from the long term disability benefits and this action be granted ordering defendants to pay the benefit amounts that plaintiffs are entitled and granting attorneys fees that may consider applicable.

I HEREBY CERTIFY that I have sent a true and exact copy of this document to Luis F. Colón-Conde, Esq. Fiddler, González & Rodríguez PO Box 363507 San Juan, PR 00936-35067. RESPECTFULLY SUBMITTED.

In Ponce, Puerto Rico, this August 10, 2001.

Lemuel Negrón-Colón
PO Box 8849
Ponce, PR 00732-8849
Tel./Fax 840-6719
USDC-PR 211202

5

...URANCE COMPANY OF N
Philadelphia, Pennsyl

We, PONCE FEDERAL BANK, F.S.B.

whose main office address is Ponce, Puerto Rico



hereby apply to the Life Insurance Company of North America for Group Policy

No. CLK-579669

We approve and accept the terms of this Group Policy.

This application is to be signed in duplicate. One part is to be attached to the Group Policy; the other part is to be returned to the Life Insurance Company of North America.

This application supersedes any previous application for this Group Policy.

PONCE FEDERAL BANK, F.S.B.
(Full or Corporate Name of Applicant)

Signed at_____    By_____
                                          (Signature and Title)

On_____    Witness_____
        (To be signed by Licensed Resident Agent where required by law)

LM-1K59        (This Copy is To Remain Attached To The Policy)

--------------------------------------------------------------------------------

**LIFE INSURANCE COMPANY OF NORTH AMERICA**
**Philadelphia, Pennsylvania**

SPECIMEN

We, PONCE FEDERAL BANK, F.S.B.

whose main office address is Ponce, Puerto Rico

hereby apply to the Life Insurance Company of North America for Group Policy

No. CLK-579669

We approve and accept the terms of this Group Policy.

This application is to be signed in duplicate. One part is to be attached to the Group Policy; the other part is to be returned to the Life Insurance Company of North America.

This application supersedes any previous application for this Group Policy.

PONCE FEDERAL BANK, F.S.B.
(Full or Corporate Name of Applicant)

Signed at_____    By_____
                                          (Signature and Title)

On_____    Witness_____
        (To be signed by Licensed Resident Agent where required by law)

LM-1K59        (This Copy is To Be Returned To Us)

**LIFE INSURANCE COMPANY OF NORTH AMERICA**
1601 CHESTNUT STREET, PHILADELPHIA, PA   19192
A STOCK INSURANCE COMPANY

**GROUP**
**LONG TERM DISABILITY**
**INCOME POLICY**

(Non-Participating)

Group Policy No. CLK-579669                    Policy Delivered In: Puerto Rico

Policy Effective Date: November 1, 1990        Policy Anniversary Date: November 1

Premium Due Dates: November 30 and the last day of each calendar month thereafter.

This is a contract between us, the Life Insurance Company of North America, and you,

PONCE FEDERAL BANK, F.S.B.

(the Policyholder).
In return for your application, and for the payment of premiums as set forth in
this policy, we agree to pay the benefits described in this policy.  These benefits
are subject to all of the terms of this policy, including any riders, endorsements,
and amendments.

This policy goes into effect on the Policy Effective Date, 12:01 a.m. at your
address.  The policy will stay in force as long as the premium is paid, until
terminated by you or us.

This contract shall be governed by the laws of the state in which it is delivered.

IN WITNESS WHEREOF, we have signed this policy at Philadelphia, PA.

GORDON L. MURPHY, President

Registrar

SPECIMEN

NG TERM DISABILITY INCOME POLI

## CONTENTS

I. **BENEFITS**                                                          **PAGE**

Benefit Waiting Period and Benefit Amount                                 7
Insuring Provisions                                                       8
Payment of Benefits                                                      11
Schedule                                                                  7

II. **PREMIUMS**

Calculation of Premiums and Rate                                          9
Changes in Premium Rates                                                  9
Due Dates                                                                 9
Grace Period                                                             10
Payment of Premiums                                                       9
Waiver of Premium                                                         6

III. **OTHER PROVISIONS**

Cancellation of Policy                                                   10
Certificate                                                              12
Claims, Forms, Notice of Claim                                          12
Definitions                                                               3
Effective Date of Insurance                                               5
Eligibility of Insurance                                                  4
Extension of Benefits after Cancellation                                  6
Termination of Insurance                                                  6

This policy includes the following attached forms on date of issue:

## DEFINITIONS

**EMPLOYER.** The term Employer means the Policyholder and all Affiliated Employers shown in the "Affiliated or Subsidiary Employers" rider.

**EMPLOYEE.** The term Employee means a full-time Employee of the Employer, but does not include Employees who are part-time or temporary or who normally work less than 30 hours a week for the employer.

**ACTIVE SERVICE.** An Employee will be considered in Active Service with the Employer on a day which is one of the Employer's scheduled work days if he is performing in the usual way all of the regular duties of his work for the Employer on a full time basis on that day, either at one of the Employer's usual places of business or at some location to which the Employer's business requires him to travel. An Employee will be deemed in Active Service on a day which is not one of the Employer's scheduled work days only if he was in Active Service on the preceding scheduled work day.

**INJURY.** The term Injury means an accidental bodily injury.

**SICKNESS.** The term Sickness means a physical or mental illness. It also includes pregnancy.

**RETIREMENT PLAN.** The term Retirement Plan means any defined benefit plan or defined contribution plan (including a profit sharing plan) sponsored by the Employer. It does not include: (1) an individual deferred compensation agreement; (2) a profit sharing or any other retirement or savings plan that is maintained in addition to a defined benefit or other defined contribution pension plan; or (3) any Employee savings plan including a thrift, stock option or stock bonus plan, individual retirement account or 401(k) plan.

## DEFINITIONS (Continued)

**BASIC EARNINGS.** The term Basic Earnings means the Employee's rate of pay reported by the Employer. It does not include overtime, bonus, additional compensation or pay for more than 40 hours a week.

For an Employee who is paid wholly or in part by commissions, the term Basic Earnings will also include commissions based on an average of the commissions paid by the Employer for the 24 months immediately preceding the onset of Disability. If such Employee was not in the employ of the Employer during the entire preceding 24 month period, his commissions will be based on an average of the total number of months he was so employed.

Basic Earnings are determined initially on the date the Employee becomes insured. A change in the amount of Basic Earnings will be considered effective on the date of the change. If the Employee is not in Active Service on that day, no increase in Basic Earnings will be considered effective until he returns to Active Service for one full day. In no event will an increase in an Employee's Basic Earnings be considered effective if it occurs:

    (1) between separate periods of Disability which are considered one period under the Successive Periods of Disability provision; or

    (2) during a Benefit Waiting Period.

**INDEXED BASIC EARNINGS.** An Employee's Indexed Basic Earnings is an amount determined as follows:

For the first year the Employee is Disabled, his Indexed Basic Earnings will be equal to his Basic Earnings.

After the Employee has been Disabled for 1 year, his Basic Earnings will be increased on each annual anniversary of the date he became Disabled. The amount of each increase will equal A or B, whichever is less where:

    A = 10% of the Employee's Indexed Basic Earnings during the preceding year of Disability.
    B = The rate of increase in the Consumer Price Index (CPI-W) during the preceding calendar year.

The Employee's Basic Earnings will not be decreased by a drop in the Consumer Price Index (CPI-W).

CPI-W means the Consumer Price Index for Urban wage Earners and Clerical Workers published by the US Department of Labor. If the index is discontinued or changed, another nationally published index that is comparable to the CPI-W will be used.

## DEFINITIONS (Continued)

**DISABILITY.** An Employee will be considered Disabled if because of Injury or Sickness:

1. he is unable to perform all the material duties of his regular occupation; and after Monthly Benefits have been payable for 24 months, he is unable to perform all the material duties of any occupation for which he is or may reasonably become qualified based on his education, training or experience.

**RESIDUAL DISABILITY.** An Employee will be considered Residually Disabled if, while he is Disabled, he returns to any work for wage or profit.

## ELIGIBILITY FOR EMPLOYEE INSURANCE

Each Employee in one of the Classes of Eligible Employees shown below will become eligible for Employee Insurance on the day he completes the Waiting Period, if any. An Employee who was previously insured and whose insurance ceased must satisfy the New Employee Group Waiting Period to become insured again. If the insurance on an Employee ceased because he was no longer employed in a Class of Eligible Employees, he is not required to satisfy any Waiting Period if he again becomes a member of a Class of Eligible Employees within one year after his insurance ceased.

**INITIAL EMPLOYEE GROUP.** The Initial Employee Group is made up of Employees:

    (1)   in the employ of an Employer on the Effective Date of the policy; or

    (2)   in the employ of an Employer on the date that Employer becomes an Affiliated Employer.

**NEW EMPLOYEE GROUP.** The New Employee Group is made up of Employees whose employment with an Employer starts after the Effective Date of the policy.

**WAITING PERIOD.**
    Initial Employee Group:
       None

    New Employee Group:
       Upon completion of three continuous months of Active Service with the Employer.

**CLASSES OF ELIGIBLE EMPLOYEES.**

Class 1       All active full-time Employees of the Policyholder over age 18 and regularly working a minimum of 30 hours per week.

## EFFECTIVE DATE OF EMPLOYEE INSURANCE

Each Employee will become insured for Employee Insurance on the date he becomes eligible for it. If an Employee is not in Active Service on the date his insurance would otherwise become effective, it will become effective on the date he returns to Active Service.

## TERMINATION OF INSURANCE

The insurance on an Employee will cease on the earliest date below:

(1) the date the Employee ceases to be in a Class of Eligible Employees or ceases to qualify as an Employee;

(2) the last day for which the Employee has made a required premium contribution for the insurance;

(3) the date the policy is cancelled;

(4) the date the Employee's Active Service ends, except as set forth below.

    (a) If the Employee's Active Service ends due to Disability for which Monthly Benefits are or may become payable, the insurance will continue while that Disability continues during the Benefit Waiting Period and thereafter but only for as long as Monthly Benefits are payable for Disability or Residual Disability.

    (b) If the Employee returns to Active Service in a Class of Eligible Employees as soon as Disability ceases, the insurance will be reinstated when the Policyholder pays the premium for him.

(5) If the Employer insures his Employee as a member of a trade association or an insurance trust fund, on the date that the Employer no longer participates.

## WAIVER OF PREMIUM

Premium for an Employee will be waived while Monthly Benefits for Disability or Residual Disability are payable to him.

## EXTENSION OF BENEFITS AFTER CANCELLATION

Payment of Monthly Benefits will not be affected by cancellation of this policy as long as the Disability begins while this policy is in force.

## CONVERSION PRIVILEGE

**HOW AND WHEN TO CONVERT.** When an Employee's Long Term Disability Insurance under this policy ceases, he may be eligible to be insured under a group policy providing converted long term disability benefits (called Converted Insurance) only if he: (1) is Entitled to Convert; and (2) applies in writing and pays the first premium for Converted Insurance to the Insurance Company within either of the following periods of time after the date his insurance under this policy ceases:

(a) within 31 days, without evidence of good health; or

(b) after 31 days but not more than 62 days, with evidence of good health.

**ENTITLED TO CONVERT.** An Employee is Entitled to Convert Long Term Disability Insurance only if:

(1) he has been insured for at least 12 consecutive months under this policy or under this and a prior Long Term Disability group policy issued to the Policyholder; and

(2) his insurance under this policy ceased because he was no longer in Active Service because of resignation, involuntary termination, layoff or an uninsured leave of absence.

**NOT ENTITLED TO CONVERT.** An Employee is not Entitled to Convert if:

(1) he is no longer in a Class of Eligible Employees;

(2) he has attained age 70;

(3) he has retired;

(4) he is not in Active Service because of disability; or

(5) this policy is cancelled for any reason.

**CONVERTED INSURANCE.** Converted Insurance will be provided under the plan of benefits offered by the Insurance Company at the time the first premium is received.

A certificate under the group converted policy will be issued to the Employee describing his benefits. Converted Insurance will take effect on: (a) the day after the Employee's insurance under this policy ceases; or (b) in the case that an Employee is required to submit evidence of good health, the day the Insurance Company accepts the evidence. The premium on the day it takes effect will be based on: (a) class of risk; (b) age; and (c) benefits.

The Insurance Company or the Policyholder will give the Employee further details of the available Converted Insurance.

## SCHEDULE

**BENEFIT WAITING PERIOD.** The Benefit Waiting Period for an Employee will be 180 days of continuous Disability. A period of Disability will be considered continuous even if the Disabled Employee returns to full-time work in his regular job for up to a total of 30 days during the Benefit Waiting Period. The Benefit Waiting Period will be extended by the number of days the Employee temporarily returned to work.

**MONTHLY BENEFIT.** The Monthly Benefit for an Employee for any month is:
1.  The lesser of:
    a.  66 2/3% of the Employee's Basic Monthly Earnings rounded to the nearest dollar;
        or
    b.  $7,500; and
2.  minus Other Benefits for that month.

The Monthly Benefit will not be less than $50., regardless of any reductions shown in this Schedule. Monthly Benefits will be pro-rated if payable for any period less than a month.

**RESIDUAL DISABILITY BENEFIT.** The Monthly Benefit for any month during which the Employee is Residually Disabled will be:
1.  the Monthly Benefit as figured above for the first 12 months Residual Disability Benefits are payable; and
2.  the Monthly Benefit as figured above minus 50% of the Employee's monthly earnings received while he is Residually Disabled after the first 12 months Residual Disability Benefits are payable.

If, during any month the Employee returns to work the sum of his Residual Disability Benefit, his earnings, and any Other Benefits, exceed:
1.  100% of his Indexed Basic Monthly Earnings for the first 12 months benefits are payable for Residual Disability; or
2.  80% of his Indexed Basic Monthly Earnings after the first 12 months benefits are payable for Residual Disability;
his Residual Disability Benefit will be further reduced by such excess amount.

The Residual Disability Benefit will continue until the earlier of the following dates:
1.  the date the Employee is no longer Disabled; or
2.  the date Monthly Benefits are no longer payable.

The Insurance Company will, from time to time, review the Employee's status and may require an account of his earnings and proof of continued Disability.

The Monthly Benefit during a period of Residual Disability will not be less than $50., regardless of any reductions shown in this Schedule. Residual Disability Benefits will be pro-rated if payable for any period less than a month.

**SCHEDULE** (Continued)

**OTHER BENEFITS.**   Other Benefits include:

(1)   any amounts which the Employee or his dependents receive on account of his disability under:

(a)   any group or franchise insurance or similar plan for persons in a group;

(b)   the Canada and Quebec Pension Plans;

(c)   any local, provincial or federal government disability or retirement plan or law;

(d)   any state disability or retirement benefits which the Employee receives (or is assumed to receive*) on his own behalf;

(e)   any salary or wage continuance plan of the Employer;

(f)   the Jones Act; or any workers' compensation, occupational disease or similar law including all permanent as well as temporary disability benefits;

(g)   any work loss provision in the mandatory part of any "No-Fault" auto insurance policy;

(2)   any disability or Old Age benefits payable under the Federal Social Security Act, which the Employee receives (or is assumed to receive*) on his own behalf;

(3)   any disability or Old Age benefits payable under the Federal Social Security Act which the Employee receives (or is assumed to receive*) on behalf of his dependents; or which his dependents receive on account of the Employee's receipt (or assumed receipt*) of such benefits; and

(4)   any retirement benefits which an Employee receives under: (a) a Retirement Plan sponsored by the Employer; (b) the Canada and Quebec Pension Plans; (c) the Railroad Retirement Act or the Railroad Unemployment Insurance Act.

*See the Assumed Receipt of Benefits provision.

**OTHER INSURANCE.**   If there is other Group Disability insurance which:
a)   applies to the same claim for Disability; and
b)   contains the same or similar provision for reduction because of Other Benefits;

the policy shall be liable for its pro rata share of the total claim.

"Pro rata share" means the proportion of the total benefit that the amount payable under one policy, in the absence of such other insurance, bears to the total applicable benefits under all such policies.

SCHEDULE (Continued)

**ASSUMED RECEIPT OF BENEFITS.**

If an Employee is covered under the Federal Social Security Act, for any disability or Old Age benefit, Statutory Disability (if applicable), Worker's Compensation, or similar laws, he will be assumed to be receiving such benefits for himself (and for his dependents, if applicable). These assumed benefits will be the amount the Insurance Company estimates he (and his dependents, if applicable) is eligible to receive. This assumption will not be made if the Employee gives the Insurance Company proof that:

    (1)  he has applied for these benefits; and

    (2)  payments were denied.

However, if payments for disability were denied solely because the disability was not expected to last at least 12 consecutive months, the Employee will be assumed to be receiving such benefits after his disability has continued for 12 consecutive months. This assumption will not be made if he gives the Insurance Company proof that:

    (1)  he has re-applied for benefits; and

    (2)  payments were again denied.

The Insurance Company will not assume receipt of, nor reduce the Monthly Benefit by, any elective, actuarially reduced, early retirement benefits under such laws until the Employee actually receives such benefits.

**INCREASES IN OTHER BENEFITS**

The Insurance Company will not consider any cost of living increase in any Other Benefits which is effective after:

    (1)  the first payment of such Other Benefit becomes due; and

    (2)  Monthly Benefits become payable under the policy.

**RECOVERY OF OVERPAYMENTS**

If the Monthly Benefit for any month is overpaid, the Insurance Company has the right to recover the amount overpaid by either of the following methods:

    (1)  a deduction of the overpaid amount from any future payments by the Insurance Company; or

    (2)  a lump sum repayment by the Employee of the overpaid amount.

**SCHEDULE** (Continued)

**LUMP SUM PAYMENTS.**

Any Other Benefits paid in a lump sum (except as shown below) will be deemed to be paid in monthly amounts prorated over the time for which the sum was paid.  If no such time is stated, the lump sum will be prorated monthly over the expected life span of the Employee.  The Insurance Company will determine that expected life span.

Lump Sum Payments under:

 (1) a Retirement Plan will be deemed to be paid in the monthly amount which:

  (a) is provided by the standard annuity option under the Plan, as identified by the Policyholder; or

  (b) is prorated under a standard annuity table over the expected life span of the Employee (if the Plan does not have a standard annuity option);

 (2) the Jones Act or any workers' compensation, occupational disease or similar law (which includes benefits paid under a Compromise and Release) will be deemed to be paid monthly;

  (a) at the rate stated in the award;

  (b) at the rate paid prior to the lump sum (if no rate is stated in the award); or

  (c) at the maximum rate set by the law (if no rate is stated and the Employee did not receive a periodic award).

## INSURING PROVISIONS

### LONG TERM DISABILITY BENEFITS

**COMMENCEMENT OF BENEFITS.**

The Insurance Company will begin paying Monthly Benefits in amounts determined from the Schedule when it receives due proof that:

(1)   the Employee became Disabled while insured for this Long Term Disability Insurance; and

(2)   his Disability has continued for a period longer than the Benefit Waiting Period shown in the Schedule.

**DURATION OF BENEFITS.**

The Insurance Company will stop paying Monthly Benefits on the earlier of the following dates:

(1)   the date the Employee ceases to be Disabled; or

(2)   whichever of the following dates is applicable to the Employee:

| Age When Disability Began | Date Monthly Benefits Cease |
|---|---|
| Age 62 or under | The later of: (a) the Employee's 65th birthday; or (b) the date the 42nd Monthly Benefit is payable; |
| Age 63 | The date the 36th Monthly Benefit is payable; |
| Age 64 | The date the 30th Monthly Benefit is payable; |
| Age 65 | The date the 24th Monthly Benefit is payable; |
| Age 66 | The date the 21st Monthly Benefit is payable; |
| Age 67 | The date the 18th Monthly Benefit is payable; |
| Age 68 | The date the 15th Monthly Benefit is payable; |
| Age 69 or over | The date the 12th Monthly Benefit is payable. |

## INSURING PROVISIONS

### LONG TERM DISABILITY BENEFITS (Continued)

**MENTAL ILLNESS, ALCOHOLISM AND DRUG ABUSE LIMITATION.**

The Insurance Company will pay Monthly Benefits for no more than 24 months during an Employee's lifetime for Disability or Residual Disability caused or contributed to by mental illness, alcoholism or drug abuse while the Employee is not confined in a hospital. An Employee will be considered confined in a hospital only if he is confined continuously for at least 14 days in a hospital licensed to provide care and treatment for the condition causing the Disability.

LONG TERM DISABILITY INCOME POLICY

## INSURING PROVISIONS

## LONG TERM DISABILITY BENEFITS (Continued)

**PRE-EXISTING CONDITION LIMITATION.**

The Insurance Company will not pay Monthly Benefits for any period of Disability which results, directly or indirectly, from an Injury or Sickness for which the Employee, during the 3 months prior to the most recent Effective Date of his insurance: (1) incurred expenses; (2) received medical treatment; (3) took prescribed drugs or medicines; or (4) consulted a physician.  This limitation will not apply to a period of Disability which begins more than 12 months after the most recent Effective Date of the Employee's Insurance.

**CONTINUITY OF COVERAGE AND PRE-EXISTING CONDITION LIMITATION.**

The Pre-existing Condition Limitation will be waived, as described below, for an Employee who was insured on the day before the Effective Date of this policy under a group long term disability policy: (a) sponsored by the Employer; and (b) replaced by this policy; provided such Employee:

 (1) is in Active Service on the Effective Date of this Policy; and

 (2) has fulfilled the requirements of any Pre-existing Condition Limitation of the replaced policy.

However, if such Employee:

 (1) is in Active Service on the Effective Date of this policy; and

 (2) has not fulfilled the requirements of any Pre-existing Condition Limitation of the replaced policy because the time period required prior to start of Disability has not been satisfied;

any portion of time which may have been satisfied under such Pre-existing Condition Limitation will be applied toward the satisfaction of that time period requirement of the Pre-existing Condition Limitation of this policy.

If Monthly Benefits are determined to be payable, they will be paid according to the provisions of this policy.

## INSURING PROVISIONS

### LONG TERM DISABILITY BENEFITS (Continued)

**SUCCESSIVE PERIODS OF DISABILITY.**

Separate periods of Disability resulting from the same or related causes will be considered one period of Disability unless separated by the Employee no longer being qualified to receive Monthly Benefits for at least 6 consecutive months.

Separate periods of Disability resulting from unrelated causes will be considered one period of Disability unless separated by a period of at least one full day, during which the Employee is no longer qualified to receive Monthly Benefits.

These provisions do not apply:

    (1)  to the Benefit Waiting Period; or

    (2)  when the Employee becomes eligible for benefits under any group long term disability policy.

## INSURING PROVISIONS

### LONG TERM DISABILITY BENEFITS (Continued)

**FAMILY SURVIVOR BENEFITS.**

The Insurance Company will pay Family Benefits as set forth below for up to 6 months if:

    (1)   the Employee becomes Disabled while insured for Family Benefits;

    (2)   the Disability has continued for at least 6 months beyond the Benefit Waiting Period; and

    (3)   the Employee dies while Monthly Benefits are being paid for that Disability and the Insurance Company receives due proof of death.

**PAYMENT OF FAMILY BENEFITS.**

Family Benefits will be payable Monthly beginning one month after the Employee's death.  Family Benefits will be paid to the Employee's lawful spouse if living.  If the lawful spouse is not living when any Family Benefit is due, it will be paid in equal shares to each child of the Employee.  No Family Benefits will be paid if there is no lawful spouse or child.

The term child means the Employee's unmarried child (including a stepchild living with the Employee at the time of death) who is less than 21 years old.  Family Benefits may not be assigned.  Payment to anyone as provided above will release the Insurance Company from all liability for Family Benefits to the extent of the payments made.

**AMOUNT OF FAMILY BENEFITS.**

The amount payable for Family Benefits will be equal to 100% of the sum of:

    (1)   the Monthly Benefit due for the last full month of Disability before the Employee's death; and

    (2)   any amount by which such Monthly Benefit was reduced because of wage or profit received for work performed.

### INSURING PROVISIONS

### LONG TERM DISABILITY BENEFITS (Continued)

**EXCLUSIONS.**

No Monthly Benefits will be paid if the Employee's Disability or Residual Disability results, directly or indirectly, from:

      (1)  injuries intentionally self-inflicted while sane or insane; or

      (2)  any act or hazard of a declared or undeclared war.

No Monthly Benefits will be paid for a period of Disability or Residual Disability when the Employee is not under the care of a licensed physician.

LONG TERM DISABILITY INCOME POLICY

## PREMIUMS

**PREMIUM PAYMENT.** The first premium will be due on the Effective Date. After that, premium will be due monthly unless the Policyholder and the Insurance Company agree on some other method of premium payment. The Policyholder and the Insurance Company may agree to change the method of premium payment from time to time. Premiums are payable at the Home Office of the Insurance Company or to an authorized agent of the Insurance Company.

**PREMIUM DUE DATE.** After the Effective Date, the Premium Due Date will be the day of the month with the same number as the Anniversary Date or the last day of a month in which there is no day with the same number as the Anniversary Date. If the Policyholder and the Insurance Company agree that premiums will be paid on a quarterly, semi-annual or annual basis, the Premium Due Date will be at the appropriate regular interval, quarterly, semi-annually or annually.

**MONTHLY STATEMENT DATE.** If premiums are to be paid monthly, the Monthly Statement Date will be the same as the Premium Due Date. If premiums are to be paid on a quarterly, semi-annual or annual basis, the Monthly Statement Date will be the day in each month with the same number as the Premium Due Date.

**MONTHLY PREMIUM STATEMENT.** If premiums are due monthly, a Monthly Premium Statement will be prepared as of the Premium Due Date. This Monthly Premium Statement will show the premium due. If premiums are due quarterly, semi-annually or annually, a Monthly Premium Statement will be prepared as of the Monthly Statement Date for the time from the Monthly Statement Date to the next Premium Due Date. This Monthly Statement will reflect any pro rata premium charges and credits due to changes in the number of insured persons and changes in insurance amounts that took place in the preceding month.

**SIMPLIFIED ACCOUNTING.** To simplify the accounting process, premium adjustments will be made on the Monthly Statement Date that is the same as or next follows the date that (1), (2) or (3) below takes place.

(1)  A person becomes insured.

(2)  The amount of insurance on a person changes, but not due to revision of the Schedule.

(3)  A person ceases to be insured.

LONG TERM DISABILITY INCOME POLICY

## PREMIUMS  (Continued)

**MONTHLY PREMIUM RATE.**  The premium will be determined at the rate of $.35 per month for each $100 of Covered Payroll.

Covered Payroll for an Employee will mean his monthly rate of Basic Earnings for the insurance month prior to the date such determination is made.  However, an Employee's Covered Payroll will not include any part of his monthly Basic Earnings which exceed $11,245.

**CALCULATION OF PREMIUMS.**  The premium will be calculated by multiplying the total amount of Covered Payroll on the Premium Due Date by the Monthly Premium Rate applicable on that date.  If the Policyholder and the Insurance Company agree to a change in the method of premium payment or to a change in the Anniversary Date, an appropriate pro rata adjustment will be made in the premium due.

**CHANGES IN PREMIUM RATES.**  The premium rates may be changed by the Insurance Company from time to time with at least 31 days advance written notice.  No change in rates will be made until 12 months after the Effective Date.  An increase in rates will not be made more often than once in a 12 month period.  However, the Insurance Company reserves the right to change the rates at any time if: 1) the terms of the policy change; 2) a division, subsidiary, affiliated company or eligible class is added or deleted from the policy; 3) there is a change in the factors bearing on the risk assumed; or 4) any federal or state law or regulation is amended to the extent that the Company's benefit obligation is affected.  If an increase in rates takes place on a date that is not a Premium Due Date, a pro rata premium will be due on the date of the increase.  The pro rata premium will apply for the increase from the date of the increase to the next Premium Due Date.  If a decrease in rates takes place on a date that is not a Premium Due Date credit will be granted.  The pro rata credit will apply for the decrease from the date of the decrease to the next Premium Due Date.

LM DISABILITY INCOME POLICY

## CANCELLATION OF POLICY

**NOTICE OF CANCELLATION.**

The Policyholder or the Insurance Company may cancel the policy as of any Premium Due Date by giving written notice at least 31 days in advance of that date.

If a premium is not paid when due, the policy will automatically be cancelled as of the Premium Due Date, except as set forth below.

The Insurance Company may cancel the policy as of any premium due date if the number of insured Employees is less than 10 or less than 75% of those eligible.

**GRACE PERIOD.**

If, before a Premium Due Date, the Policyholder has not given written notice to the Insurance Company that the policy is to be cancelled, a Grace Period of 31 days will be granted for the payment of each premium after the initial premium. The policy will stay in effect during that time. If any premium is not paid by the end of the Grace Period, the policy will automatically be cancelled at the end of the Grace Period; except that, if the Policyholder has given written notice in advance of an earlier date of cancellation, the policy will be cancelled as of the earlier date. The Policyholder will be liable to the Insurance Company for any unpaid premium for the time the policy was in force.

## PAYMENT OF BENEFITS

**TO WHOM PAYABLE.** Any benefits that are payable for Disability will be paid to the Employee. Family Benefits will be paid to the eligible survivor(s) according to the terms of that section.

If any person to whom benefits are payable is a minor or, in the opinion of the Insurance Company, is not able to give a valid receipt for any payment due him, such payment will be made to his legal guardian. However, if no request for payment has been made by his legal guardian, the Insurance Company, may at its option, make payment to the person or institution appearing to have assumed his custody and support.

If an Employee dies while any of his Disability benefits remain unpaid, the Insurance Company may, at its option, make direct payment to any of the following living relatives of the Employee: spouse, mother, father, children, brothers or sisters; or to the executors or administrators of the Employee's estate.

Payment in the manner described above will release the Insurance Company from all liability to the extent of any payment made.

**TIME OF PAYMENT.** Any Disability benefits will be paid at regular intervals of not more than one month. Any balance which remains unpaid at the end of any period for which the Insurance Company is liable will be paid at that time.

## PROVISIONS

**ENTIRE CONTRACT.**  The entire contract will be made up of the policy, the application of the Policyholder, a copy of which is attached to the policy, and the applications, if any, of the Employees.

**POLICY CHANGES.**  Changes may be made in the policy only by amendment signed by the Policyholder and by the Insurance Company acting through its President, Vice President, Assistant Vice President, Director or Assistant Director.  No agent may change or waive any terms of the policy.

**STATEMENTS NOT WARRANTIES.**  All statements made by the Policyholder or by an insured Employee will be deemed representations and not warranties.  No statement made by the Policyholder or by the Employee to obtain insurance will be used to void or reduce the insurance unless it is made in writing and is signed by the Policyholder or the Employee and a copy is sent to the Policyholder, the Employee or his Beneficiary.

**NOTICE OF CLAIM.**  Written notice of claim must be given to the Insurance Company within 30 days after the occurrence or start of the loss on which a claim is based.  If notice is not given in that time, the claim will not be invalidated or reduced if it is shown that written notice was given as soon as was reasonably possible.

**CLAIM FORMS.**  When the Insurance Company receives the notice of claim, it will give to the claimant, or to the Policyholder for the claimant, the claim forms it uses for filing proof of loss.  If the claimant does not get these claim forms within 15 days after the Insurance Company receives notice of claim, he will be considered to have met the proof of loss requirements if he submits written proof of loss within 90 days after the date of loss.  This proof must describe the occurrence, character and extent of the loss for which claim a is made.

**PROOF OF LOSS.**  Written proof of loss must be given to the Insurance Company within 90 days after the date of the loss for which a claim is made.  If written proof of loss is not given in that time, the claim will not be invalidated nor reduced if it is shown that written proof of loss was given as soon as was reasonably possible.  Upon request, written proof of continued Disability and of regular attendance of a physician must be given to the Insurance Company within 30 days of such request.

**PHYSICAL EXAMINATION.**  The Insurance Company, at its own expense, will have the right to examine any person for whom a claim is pending as often as it may reasonably require.

**LEGAL ACTIONS.**  No action at law or in equity will be brought to recover on the policy until at least 60 days after proof of loss has been filed with the Insurance Company.  No action will be brought at all unless brought within 3 years (Kansas: 5 years; South Carolina: 6 years), after the time within which proof of loss is required by the policy.

**TIME LIMITATIONS.**  If any time limit set forth in the policy for giving notice of claim or proof of loss, or for bringing any action at law or in equity is less than that permitted by the law of the state in which the Employee lives when the policy is issued, then the time limit provided in the policy is extended to agree with the minimum permitted by the law of that state.

LM-6N32

physician who is practicing legally. The Insurance Company will in no way disturb the physician/patient relationship.

**CERTIFICATES.** The Insurance Company will issue to the Policyholder for delivery to each insured Employee an individual certificate. The Policyholder will be responsible for distributing the certificates to its Employees. The certificate will show the benefits provided under the policy. It will set forth any changes in benefits due to age and to whom benefits will be paid. Nothing in the certificate will change or void the terms of the policy.

LC    TERM DISABILITY INCOME POLICY

## MISCELLANEOUS PROVISIONS

**INSURANCE DATA.** The Policyholder will give the Insurance Company all of the data that it needs to calculate the premium and all other data that it may reasonably require. Failure of the Policyholder to give this data will not void or continue an Employee's insurance. The Insurance Company has the right to examine the Policyholder's records relative to these benefits at any reasonable time while the policy is in effect. It also has this right until all rights and obligations under the policy are finally determined.

**MALE PRONOUN.** The male pronoun as used herein will be deemed to include the female.

**INCORRECT PREMIUM PAYMENT.** Premiums paid in error for a person who is not eligible to be insured, or for a person after his insurance has ceased, will be refunded without interest when requested by the Policyholder. This premium will not be refunded, however, for more than a 6 month period nor for any period before the last Anniversary Date.

**ADMINISTRATION.** The Insurance Company will deal solely with the Policyholder who will be deemed the representative of each Employee. Any action taken by the Policyholder will be binding on the Employees.

**NOT IN LIEU OF WORKERS' COMPENSATION.** The policy is not in lieu of and does not affect requirements for coverage under workers' compensation laws.