IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

LUZ S. TORRES BURGOS,
NELSON E. COLÓN MELÉNDEZ

    Plaintiffs

       v.

LIFE INSURANCE COMPANY OF
NORTH AMERICA; CIGNA GROUP
INSURANCE CO. Y ABC INSURANCE
CO.

    Defendants

CIVIL NO. 98-2394 (JP)



**BRIEF IN COMPLIANCE WITH INITIAL SCHEDULING CONFERENCE**

**AND REQUESTING SUMMARY JUDGEMENT**

TO THE HONORABLE COURT:

    Come now defendants, through their undersigned attorney very respectfully state

and pray as follows:

1.    On April 29, 1999 this Honorable Court issued an Initial Scheduling Conference

    Order in the present case.

2.    As part of the Initial Scheduling Conference Order this Honorable Court ordered the

    parties to submit briefs regarding Torres´ denial of benefits, as well as, the

    interpretation of the Plan provision regarding the time period and amount of benefits

    Torres would have received.

3.    In compliance with said Order, defendant files the present brief.

DENIAL OF THE BENEFITS: EXHAUSTION OF ADMINISTRATIVE REMEDIES

1.    The Life Insurance Company of North America, Long Term Disability Income Policy

defines a disabled employee as follows:

> "An employee will be considered Disabled if because of Injury
> or Sickness:
>
> > he is unable to perform all the material duties of his
> > regular occupation; and after Monthly Benefits have been
> > payable for 24 months, he **is unable to perform all the
> > material duties of any occupation for which he is or may
> > reasonably become qualified base on his education,
> > training or experience.**"  Life Insurance Company of North
> > America, Long Term Disability Income Policy, Group Policy No.
> > CLK-579669, Clause LM-6N09. (Emphasis supplied)

2.    The policy also establishes the moment when the plan will commence to pay the

benefits there provided.

> "COMMENCEMENT OF BENEFITS.
>
> The Insurance Company will begin paying Monthly Benefits in
> amounts determined from the Schedule **when it receives due
> proof** that:
>
> (1)  ~~the Employee became Disabled while insured for this Long~~
> Term Disability Insurance; and
>
> (2)  his Disability has continued for a period longer than the Benefit
> Waiting Period shown in the Schedule."  Life Insurance
> Company of North America, Long Term Disability Income
> Policy, Group Policy No. CLK-579669, Clause LM-6N20.
> (Emphasis supplied)

3.    Under the plan it is a requirement to submit due proof to the disability in order to be

entitled to receive benefits.

4.    The Employee Retirement Income Security Act, 29 U.S.C.A. §1001 et seq.,

(hereinafter "ERISA"), imposes the obligation on every employee benefit plan to:

> "(1) provide adequate notice in writing to any beneficiary whose claim for benefits under the plan has been denied setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant, and
>
> (2) **afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim.**" 29 U.S.C.A. §1133 (Emphasis supplied)

5.  Based on the language of the section cited above and on the legislative history of ERISA, many Circuits have interpreted that the exhaustion of administrative procedure is required in order to file a suit in the Federal Court under ERISA.

6.  The First Circuit has adopted the interpretation made by other Circuits regarding the application of the exhaustion doctrine to suits brought under ERISA. In <u>Drinkwater v. Metropolitan Life Ins. Co.</u>, 846 F.2d 821 (1st Cir. 1988), the U.S. Court of Appeals for the First Circuit affirmed the decision of the District Court for the District of Massachusetts to dismiss the claim brought under ERISA for failure to exhaust administrative remedies.

7.  More recently, the First Circuit reaffirmed the *Drinkwater* decision. In <u>Terry v. Bayer Corp.</u>, 145 F.3d 28 (1st Cir. 1998), the Court of Appeals went further into requiring that the request for **an appeal of a determination by the plan administrator must be done in within the period of time provided by the review process**. In said case the First Circuit concluded as follows:

> "*Drinkwater* **mandates that a claimant must have exhausted the plans administrative remedies before bringing suit to recover benefits.** [citations omitted] This

3

court is not alone in so holding.  See, e.g. Communications Workers of Am. V. AT/T, 40 F.3d 426, 431-34 (D.C. Cir. 1994); Makar v. Health Care Corp., 872 F.2d 80, 82-83 (4th Cir 1989); Amato v. Bernard, 618 F.2d 559, 566-568 (9th Cir 1980).  A claimant is required to attend to the plan´s internal appeal process first, unless ´the administrative route is futile or the remedy inadequate.´ Drinkwater, 846 F.2d 826 (quoting Amato, supra)....

We have not yet had the opportunity to apply the Drinkwater exhaustion requirement to the situation here where a claimant files an appeal, but does so late.  In such a circumstance the claimant, while ostensible availing himself of the internal review process, has procedurally defaulted as a result of the late filing.  **The same principles which inform the ERISA exhaustion requirement also counsel that part of that internal administrative process includes the responsibility on the claimant´s part to file appeals <u>in a timely fashion</u>.**" Terry at 40. (Emphasis supplied)

8.    Due to the similarities in the facts which led to the decision of <u>Counts v. American General Life and Acc. Ins. Co.</u>, 111 F.3d 105 (11th Cir 1997), with the facts which give rise to the present case,  said opinion of the U.S Court of Appeals for the Eleventh Circuit could be helpful for this Honorable Court to determine that in the present suit plaintiff has not exhausted the administrative review procedures adopted by the Life Insurance Company of North America.  In said case the defendant notified the plaintiff by letter that:

"... the committee had determined that [he] no longer met the requirements for total disability under the Plan.  The letter also provided as follows:

´... If you disagree with this determination, you may appeal the decision by sending your written request within 60 days following your receipt of this notice stating the reason for your appeal along with any additional information for review to [address omitted]....´

4

> Counts did not appeal the decision. Four months after the 60-day appeal period expired, Counts' attorney wrote AGLA a letter discussing Counts' medical situation and stating, 'We would appreciate hearing from you regarding this matter at your earliest convenience.'" *Counts* at 107

9. After an exchange of correspondence plaintiff filed the suit before the U.S. District Court for the Southern District of Georgia. The District Court granted Summary Judgement based on the fact that Counts failed to exhaust his administrative remedies.

10. The Court of Appeals affirmed the District Court decision. In doing so it concluded as follows: "It is undisputed that Counts failed to exhaust his administrative remedies. **The Plan required Counts to appeal the denial of his LTD benefits within 60 days of receiving his termination letter. Counts never appealed**. The law is clear in this circuit that plaintiffs in ERISA actions must exhaust available administrative remedies before suing in federal court." *Counts* at 108 (Emphasis supplied).

11. In the present case, CIGNA performed various attempts to obtain evidence of plaintiff's disability. Among these attempts were the letter dated February 19, 1996 to Dr. Oscar Berrios La Torre, the letter dated February 20, 1996 addressed to plaintiff, the letter dated February 28, 1996 to plaintiff, the letters sent to Dr. Guillermo Santiago and Dr. Oscar Berrios on April 10, 1996, as well as a letter sent to plaintiff on April 11, 1996. The communications specified the type of evidence which was needed.

12. Through the letter dated on April 11, 1996, CIGNA explained plaintiff that they had

5

requested additional information in various occasions and that it had not been

submitted.  The letter went on explaining as follows:

> "We have requested this information on several occasions but, unfortunately, we have not received a response as of this writing.  In the absence of your response, we must assume you are not totally disabled or you do not wish to claim benefits under your Group Insurance Plan."

13.    On July 1, 1996, CIGNA denied the claim because "there [was] insufficient evidence

to support the severity of your condition; therefore, we must conclude that you are

not totally disabled from performing the duties of your occupation..."

14.    The denial letter also notified plaintiff of her right to appeal the Plan´s decision.

> **"You may request a review of this denial by writing** to the Life Insurance Company of North America Representative signing this letter. **The written request for a review must be sent within 60 days of receipt of this letter and state the reason why you feel your claim should not have been denied**.  Include any documentation (e.g. medical data) that you feel supports your claim." (Emphasis supplied)

15.    The period to request review of the denial expired on August 30, 1999.  Plaintiff did

not submit any written request for review within that period, as it was notified to her

by CIGNA.

16.    Plaintiff admitted her failure to request a review of the determination of CIGNA in the

Answer to First Set of Interrogatories of Defendants, a document sworn by her

before a Notary Public.  To the CIGNA´s request number twelve (12) which read:

"Submit the written request for a review of the denial of defendants´ Long Term

Disability Plan claim, together with the documentation, if any, included with said

request", plaintiff answered "N/A".

17. The letter written by Dr. Oscar Berrios Latorre and dated September 24, 1996 not only was submitted after the period to request appeal had expired, but it does not comply with the content requirements of an appeal under the plan. The letter does not include the objective medical evidence which had been requested by the plan since at least February 28, 1996. Furthermore, it does not state any special circumstances for which it was submitted after the expiration of the review period.

18. On December 4, 1996 CIGNA wrote another letter to plaintiff indicating the they had received the letter of Dr. Berrios and that if she wanted to appeal she would need to do it by writing and submit objective medical information which would confirm her condition. The letter mentioned the tests or exams that would be considered objective medical evidence.

19. After this last opportunity, plaintiff did not submit any additional request indicating for which reason she understood that her claim should not have been denied, and did not submit any of the medical evidence needed by the plan to confirm her condition.

## STANDARD OF REVIEW OF CIGNA'S DETERMINATION

1. In <u>Firestone Tire and Rubber Co. v. Bruch</u>, 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 809, the Supreme Court adopted a two prong standard of review of determinations regarding benefits denials under ERISA. The standard applicable where the plan administrator has discretion is the "deferential" or "abuse of discretion" standard of review. When the plan does not grant discretionary powers to the administrator, the "de novo" standard of review applies.

7

2.  The Court of Appeals for the First Circuit has followed the doctrine established in *Firestone*. Recupero v. New England Telephone and Telegraph Company, 118 F.3d 820 (1st Cir 1997) (where the "abuse of discretion" or "arbitrary and capricious" standard was appropriate) Hughes v. Boston Mut. Life Ins. Co. 26 F.3d 264 (1st Cir 1994) (where "de novo" review was deemed appropriate due to the absence of any discretionary plan language.)

3.  However, the denial of benefits in the present case were due to the lack of objective medical evidence which would confirm plaintiff´s condition. Either through an "abuse of discretion" of a "de novo" standard of review, the question that this Honorable Court would have to considered is whether the documents submitted to CIGNA by plaintiff constitute due proof of the alleged total disability.

4.  To reach a conclusion to said controversy, this Honorable Court will have to analyze the documents submitted to the plan administrator by plaintiff.

    > "To review *de novo* all the evidence trustees *might* have considered is to transfer the administration of benefit and pension plans from their designated fiduciaries to the federal bench. Such substitution of authority is plainly what the formulated standards in this field are intended to prevent." Berry v. Ciba-Geigy Corp., 761 F. 2d 1003, 1007 (4th Cir 1985) (Emphasis supplied)

5.  The Fifth Circuit has also adopted the doctrine of limiting the judicial review to the documents submitted to the plan, when the controversy in the case is whether sufficient evidence was submitted to confirm the disability.

    > **"In reviewing an administrator´s decision, a court must focus on the evidence before the administrator at the time his final decision was rendered. Wardle v. Central States,**

8

627 F.2d at 824. (7th Cir 1980) Thus, the reviewing court may not hold the *de novo* hearing on the question of a claimant´s entitlement to benefits under an employee benefit plan. **If new evidence is presented to the reviewing court on the merits of the claim for benefits, the court should, as a general rule, remand the matter to plan administrator for further assessment.**" Offutt v. Prudential Insurance Company of America, 735 F.2d 948 (5th Cir, 1984) (Emphasis supplied)

6. The sole reason why the payment of benefits was denied in the present case, was the fact that plaintiff failed to submit due evidence which would confirm her total disability to work. Therefore, the question that this Honorable Court would have to decide when reviewing said determination is whether plaintiff filed due proof of her disability in a timely fashion. To answer said question the Court will only have to consider the documents submitted to the plan.

7. For said reason the determination reached by the Social Security Administration in the present case, should not influence the determination of this Honorable Court in the present case.

8. In a decision reasoned along the lines of Berry v. Ciba-Geigy Corp.,Id, and Offutt v. Prudential Insurance Company of America, Id, the District Court of for the Southern District of New York held that under ERISA the plan administrator should have the opportunity to make its own determination and that said authority should not be given to a government agency, including the Social Security Administration.

"The court in Glover reasoned that the standards applied by private employee benefit plans are not necessarily the same as those applied by administrative agencies even if they are interpreting the same terms so that no res judicata effect can be given to the administrative determination. Glover, 644 F.2d at 1158. This rationales is applicable to determinations of the

9

Social Security Administration as well. The plan Administrators must reach their own conclusion under the terms of the Plan as required by Glover." <u>Cutignola v. New York Telephone Company</u>, 1984 U.S. Dist. LEXIS 21346.

9.   To allow a determination of the Social Security Administration to have a res judicata effect over a determination of the plan administration will be contrary to the intent of Congress in requiring the plans organized under ERISA to adopt a full and fair review of claims process.

TIME LIMITATION TO PAYMENT OF BENEFITS FOR DISABILITY CAUSED BY MENTAL ILLNESS.

1.   The Life Insurance Company of North America, Long Term Disability Income Policy, Group Policy No. CLK-579669, establishes a limitation on the amount of payments which a beneficiary is entitled to receive under said policy when his or her disability is caused by mental illness. The limitation clause reads:

"MENTAL ILLNESS, ALCOHOLISM AND DRUG ABUSE LIMITATION.

The Insurance Company will pay Monthly Benefits for no more than 24 months during an Employee's lifetime for Disability or Residual Disability caused or contributed to by mental illness, alcoholism or drug abuse **while the Employee is not confined in a hospital**. An Employee will be considered confined in a hospital only if he is confined continuously for at least 14 days in a hospital licensed to provide care and treatment for the condition causing the Disability." Life Insurance Company of North America, Long Term Disability Income Policy, Group Policy No. CLK-579669, Clause LM-6N21. (Emphasis supplied)

2.   The controversy raised in the present case regarding this limitation is on the interpretation that this Honorable Court should give to the clause that reads: "while

the Employee is not confined in a hospital".

3.     It is important to note that the policy specifies that "An Employee will be considered confined in a hospital only if he is confined continuously for at least 14 days in a hospital licensed to provide care and treatment for the condition causing the Disability."

4.     The First Circuit held in <u>Rodríguez-Abreu v. Chase Manhattan Bank, N.A.</u>, 986 F.2d 580 (1st Cir. 1993) that: "When interpreting the provisions of an ERISA benefit plan, we use federal substantive law including the ´common-sense canons of contract interpretation.´" Id. at 585 (quoting <u>Bellino v. Schlumberger Technologies, Inc.</u>, 944 F. 2d 26, 29 (1st Cir. 1991) and <u>Burnham v. Guardian Life Ins. Co. of Am.</u>, 973 F.2d 486, 489 (1st Cir 1989)) Therefore,   "[c]ontract language in an ERISA action is to be given its **plain meaning**." Id. at 586 (Emphasis supplied)

5.     To determine the plain meaning of the phrase in controversy, this Honorable Court must determine which is the plain, usual, and common meaning of the conjunction "while", since the conjunction is the link which establishes the type of relationship between the subordinate clause and the principal clause of the sentence.

6.     Webster defines the term "while" the following way: "**while** *conj* **1 a:** during the time that **b:** as long as [...]" Webster's Ninth New Collegiate Dictionary, 1986.

7.     The common interpretation given by various courts to said term is that "´while´ is a word of time..." <u>Romero v. Volunteer State Life Insurance Company</u>, 10 Cal. App. 3d 571, 579 (1970). <u>Provident Life & Accident Ins. Co. v. Nitsch</u>, 123 F.2d 600, 603 (5th Cir., 1941). "The word ´while´ clearly means ´during the period´ when actually

11

engaged in such function." <u>Raude v. Christenson</u>, 70 N.W.2d 639, 644.  See also:

<u>Lumber Mut. Casualty Ins. Co. v. Stukes</u>, 72 F.Supp 463, 467 (E.D.S.C. 1947);

<u>Ayres v. Harleysville Mut. Casualty Co.</u>, 172 Va. 383, 2 S.E.2d 303.

8.  Many courts have interpreted insurance clauses limiting insurers liability "while" a

condition or situation materializes as meaning that the limitation applies "when",

"during the time that", or "as long as" the condition is present.  Furthermore, other

Courts have interpreted the word "while" in limitation clauses of insurance policies

as a term related to time.  For example, in <u>Waters v. National Life & Accident Ins.</u>

<u>Co.</u>, 61 F.Supp. 957, 959-960 (S.D.N.Y. 1945) the District Court for the Southern

District of New York explained:

> "And generally, too, **the courts have read policies absolving
> the insurer from liability ´while´ or ´when´ the insured is**
> under the influence of narcotics or of intoxicating liquor, or in
> military or naval service, or participating in war or riot, or
> engaged in violation of law **as exonerating the insurer if
> death occurs while the insured occupies the forbidden
> status**. [citations omitted]

> ´... if the parties to a contract of insurance provide that same
> shall not cover a given risk while insured is engaged in certain
> conduct or occupying a certain status thought to involve an
> increase of hazard, there would seem to be nothing for the
> courts to do but to enforce their contract as they have made
> it.´" Id. at 959-960 (Emphasis supplied)

9.  The Supreme Court of the State of Louisiana had the opportunity to interpret an

exclusionary clause drafted in a very similar way that the one in the present case.

The Louisiana Supreme Court explained:

> "Again referring to the quoted exclusionary clause of the policy,
> it is to be observed that it applies to ´... any person **while such**

12

person is employed or otherwise engaged in the automobile business, ...´

Upon the basis of Hartford´s motion for summary judgment and the affidavit offered to, it is clear that **the Brady automobile was being driven after it had been serviced**, and that the servicing of the automobile had been completed. **The policy exclusion applies only while a person is employed or engaged in servicing an automobile.**

**The meaning and common use of the words** ´after´, ´complete´, and ´**while´ are so simple and clear that reference to lexicographical authority is hardly necessary**. However, in the interest of certainty, we quote the definitions as follows:

[...]

´**While. Pending or during the time that**.´ Black´s Law Dictionary, 4tyh Ed., Webster´s New International Dictionary, 2nd Ed."

We think **it is abundantly clear under the facts of the instant case that the exclusionary clause of the policy would have applied to Waldrop only while he was actually engaged in servicing the Brady automobile**. Inasmuch as Waldrop had completed his work of servicing the car and was driving the vehicle after the completion of his work, the exclusion failed to apply." Dumas v. Hartford Accident and Indemnity Company, 181 So.2d 841, 843 (La. App. 1965). (Emphasis supplied)

10.  In the same manner the Supreme Court of Arkansas defined the term "while" as

one related to time. In Life & Casualty Insurance Company of Tennesse v. Kinney,

177 S.W.2d 768 (Sup. Court of Arkansas, 1944), Arkansas´ Highest Court held that:

"A ´when´ clause or a ´while´ clause indicates the time of an event. In the quoted section of the policy previously set out herein it will be observed that in referring to the position of the insured as standing, the policy says ´while the insured is walking or standing´ and to indicate when the insured might be

> covered in bicycle riding the policy says 'while riding a bicycle.'
> Thus the policy uses 'while' clause to indicate the element of
> time." Id. at 770

11.    The term "while", as it is used in the limitation clause of the policy now in question,

does not allow any alternative interpretation than the usual and common meaning

of said word; which is the same meaning given to said term by the above cited

courts in similar clauses.

> "The issue of ambiguity in a term of an insurance contract
> raises a question of law. Rodríguez-Abreu ambiguity Chase
> Manhattan Bank, N.A., 986 F.2d 580, 586 (1st Cir. 1993)
> 'Contract language is ambiguous **if the terms are
> inconsistent on their face, or if the terms allow reasonable
> but differing interpretations of their meaning**' Id." Dorsk
> ambiguity UNUM Life Insurance Companies of America, 8
> F.Supp.2d 19, (DC Maine, 1998) (Emphasis supplied)

12.    In the present case the clear language of the mental illness limitation clause, which

was agreed as part of the Long Term Disability Policy, does not allow two

reasonable but differing interpretations of its meaning.  The meaning of the words

used to describe the agreement to limit the coverage of the Policy in cases of

mental illness indicates that the mental illness limitation applies **during the time

that the employee is not confined to a hospital**.  As long as he or she is

confined, the benefits will be paid without limitation.  The purpose of said clause is

to guarantee the benefits of the plan to those employees who are recluse in

hospitals.  However, when the confinement ends, the limitation on the amount of

payments applies.

13.    Plaintiffs allege that the clause "while the Employee is not confined in a hospital"

should mean that the mental illness limitation agreed in the Insurance Policy applies to all cases of mental illness **except those where** the Employee is confined in a hospital for at least fourteen (14) days.  This interpretation is not reasonable.  If the parties would wanted to agree the terms which plaintiff alleges, instead using the term "while", they would have used terms such as "unless" or "except if".

14.    The interpretation given by plaintiff to the clause in question would cause the absurd result of excluding from the mental illness limitation, and therefore granting benefits until the age of retirement to, those beneficiaries who are confined to a hospital for fourteen (14) days, while applying the 24 month limitation to those employees who are confined to a hospital for thirteen (13) days.

15.    Said interpretation is not reasonable and the effects of adopting it are absurd. Therefore,  the only reasonable interpretation to be give to the clause in question when the language of the policy is given its usual and common meaning is that the 24 months limitation applies during the time that, or as long as, the Employee is not confined to a hospital.

16.    The results of the interpretation offered by CIGNA are not only reasonable, but there are many examples of limitation clauses agreed in insurance policies which seek the same result, namely, to guarantee the payment of the benefits under the insurance plan to the beneficiaries during the time that he or she is confined in a hospital.

17.    In <u>Lutheran Medical Center, of Omaha, Nebraska v. Contractors, Laborers, Teamsters and Engineers Health and Welfare Plan</u>, 25 F.3d 616 (8th Cir, 1994) the

15

Eighth Circuit had to apply a disability insurance limitation very similar to the one in the present case. In said case the limitation clause read: "Mental and nervous disorders, when confined to a hospital, are covered the same as any other sickness. **When not hospital confined and totally disabled, benefits are payable at 50% in excess of the deductible**...." Id. (Emphasis supplied)

18.    In <u>Attar v. UNUM Life Ins. Co.</u>, 1997 U.S. Dist. LEXIS 23254, the District Court for the Northern District of Texas faced a limitation clause which read:

"benefits for disability due to mental illness will not exceed 24 months of monthly payments unless the insured meets on of these situations:

1.    The insured is in a hospital or institution at the end of the 24-month period. **The monthly benefit will be paid during the confinement**."

2.    The insured continues to be disabled and becomes confined:

a.    After the 24-month period; and

b.    For at least 14 days in a row.

**The monthly benefit will be payable during the confinement**." Id. at 12. (Emphasis supplied)

21.    In <u>Vaughn v. The Centennial Life Insurance</u>, 1993 U.S. Dist. LEXIS 2108, it was the District Court for the Northern District of California, who faced this type of limitations clause. In said case the limitation clause read: "In the event of disability due to a mental, nervous, or emotional disorder, drug addiction or alcoholism, benefits will be continued after the first 24 months of payment only if you are confined at that time to a hospital or other institution qualified to provide treatment incident to such disability, as determined by Centennial..." Id. at footnote

16

**WHEREFORE**, defendants respectfully requests this Honorable Court that it admits this Motion in Compliance with Initial Scheduling Order and that it enters summary judgement and dismisses the causes of actions arising under ERISA for lack of jurisdiction due to failure to exhaust administrative remedies.    In the alternative, defendants respectfully requests this Honorable Court that it determines that the mental illness limitation agreed in the policy applies to plaintiff and has applied to her since she ceased to be recluse in a hospital.

**RESPECTFULLY SUBMITTED**.

In San Juan, Puerto Rico, this 11th day of May, 1999.

**I HEREBY CERTIFY** that on this same date I have sent a true and exact copy of this document to Lemuel Negrón Colón, Esq., P. O. Box 8849, Ponce, Puerto Rico  00732.

FIDDLER GONZÁLEZ & RODRÍGUEZ, LLP
P.O. Box 363507
San Juan, P.R. 00936-3507
Tel: 759-3146
Fax:  250-7555


By: _____
    LUIS F. COLÓN CONDE
    USDC-PR 213805

#182023.1

17

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

**99 MAY 11 PM 3 14**

LUZ S. TORRES BURGOS,
NELSON E. COLÓN MELÉNDEZ

    Plaintiffs

        v.

LIFE INSURANCE COMPANY OF
NORTH AMERICA; CIGNA GROUP
INSURANCE CO. Y ABC INSURANCE
CO.

    Defendants

CLERK'S OFFICE
U. DISTRICT COURT
SAN JUAN, P.R.

CIVIL NO. 98-2394 (JP)

---

**STATEMENT OF UNCONTESTED MATERIAL FACTS IN SUPPORT
OF DEFENDANT´S MOTION TO DISMISS AND/OR FOR
SUMMARY JUDGEMENT FOR LACK OF JURISDICTION**

TO THE HONORABLE COURT:

    COMES NOW defendants and, pursuant to Local Rule 311.12 of this Honorable

Court, through the undersigned attorneys, respectfully submits the following Statement of

Material Facts as to which there are no genuine issues to be tried:

1.    On February 6, 1996 CIGNA Group Insurance received Group Long Term Disability

    application from Ms. Wanda Goyco, Senior Vice President of Ponce Federal Bank,

    regarding the claim by Luz Torres Burgos for Long Term Disability benefits.

2.    CIGNA performed various attempts to obtain evidence of plaintiff´s disability.

    Among these attempts were the letter dated February 19, 1996 to Dr. Oscar Berrios

    Latorre, the letter dated February 20, 1996 addressed to plaintiff, the letter dated

    February 28, 1996 to plaintiff, the letters sent to Dr. Guillermo Santiago and Dr.

Oscar Berrios on April 10, 1996, as well as a letter sent to plaintiff on April 11, 1996.

The communications specified the type of evidence which was needed.

3. Through the letter dated on April 11, 1996, CIGNA explained plaintiff that they had requested additional information in various occasions and that it had not been submitted. The letter went on explaining as follows:

> "We have requested this information on several occasions but, unfortunately, we have not received a response as of this writing. In the absence of your response, we must assume you are not totally disabled or you do not wish to claim benefits under your Group Insurance Plan."

4. After said requests to plaintiff and her attending physician for objective medical information which would support plaintiffs condition, Life Insurance Company of North America notified plaintiff that her benefits were being denied because there was "insufficient evidence to support the severity of [her] condition" Letter dated July 1, 1996, from Noemí Martínez, Claim Analyst of Life Insurance Company of North America, to Ms. Luz Torres Burgos.

5. In said letter, Ms. Martínez also explained that plaintiff could request a review of said determination by writing within 60 days from the receipt of the letter.

6. Neither Life Insurance Company of North America nor CIGNA Group Insurance receive any communications related to this claim until October 2, 1996. In said date, Life Insurance Company of North America received a short narrative from Dr. Antonio O. Berrios Latorre indicating that plaintiff had been under his care since June 5, 1995; that she had been prescribed six different medications; and that she was unable to maintain any type of occupation.

-2-

7.   However, Life Insurance Company of North America did not receive any written request for review from plaintiff.

8.   On December 4, 1996, Ms. Noemí Martínez wrote to plaintiff to notify that Life Insurance Company of North America had received a report from Dr. Berrios, and explaining that in order to appeal the denial of her benefits she had to request a review in writing and submit objective medical information to confirm the severity of her condition.  Among the objective medical information that plaintiff could submit, Ms. Noemí Martínez named MMPI, Blood Cortisol or Beck Inventory and specified that any other tests done because of her mental condition would help the analysis of her case.

9.   Life Insurance Company of North America never received a written request for review of the denial of plaintiff's Long Term Disability Claim or any objective medical information to confirm the severity of her condition.

**WHEREFORE**, defendants respectfully requests that the above stated and supported facts be deemed uncontested and material, and that this Honorable Court enters summary judgement and dismisses the causes of actions arising under ERISA for lack of jurisdiction due to failure to exhaust administrative remedies.

-3-

**RESPECTFULLY SUBMITTED**.

In San Juan, Puerto Rico, this 11th day of May, 1999.

**I HEREBY CERTIFY** that on this same date I have sent a true and exact copy of this

document to Lemuel Negrón Colón, Esq., P. O. Box 8849, Ponce, Puerto Rico  00732.

FIDDLER GONZÁLEZ & RODRÍGUEZ, LLP
P.O. Box 363507
San Juan, P.R. 00936-3507
Tel: 759-3146
Fax:  250-7555


By: _____
LUIS F. COLÓN CONDE
USDC-PR 213805

-4-